[Cite as *Welch v. Schudel*, 2010-Ohio-715.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

EARNEST P. WELCH,

    PLAINTIFF-APPELLANT,          CASE NO.  15-09-13

    v.

JULIE A. SCHUDEL,           O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Van Wert County Common Pleas Court
Domestic Relations Division
Trial Court No. DR 01-06-111

Judgment Affirmed

Date of Decision:    March 1, 2010


APPEARANCES:

    *Andrew B. King*  for Appellant

    *Martin D. Burchfield*  for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, Ernest P. Welch (hereinafter "Ernest"), appeals the Van Wert County Court of Common Pleas' judgment denying his motion for a reallocation of parental rights and responsibilities. For the reasons that follow, we affirm.

{¶2} Ernest and the defendant-appellee, Julie A. Schudel (formerly Welch) (hereinafter "Julie"), were divorced on July 24, 2002 and awarded shared parental rights for their minor child, Trinity A. Welch (d.o.b. 4/24/00) (hereinafter "Trinity"), who was born as issue of the marriage. (Doc. No. 18). The shared parenting agreement provided, in pertinent part, that Earnest would have physical custody of Trinity every other week Thursday through the following Tuesday. (Doc. No. 17). After Trinity enrolled in Kindergarten in the school district where Julie resided, however, the shared parenting agreement provided Ernest visitation on weekends in accordance with local rules. (Doc. No. 18).

{¶3} On September 16, 2004, Earnest filed a motion to modify or terminate the shared parenting plan and to reallocate parental rights and responsibilities. (Doc. No. 24). On February 25, 2005, the magistrate issued a decision recommending that the shared parenting plan be amended to provide Earnest with more parenting time, but that the plan be continued as amended.

(Doc. No. 40). On May 31, 2005, the trial court adopted and approved the magistrate's decision. (Doc. No. 43).

{¶4} Thereafter, on July 2, 2008, Earnest filed a second motion for reallocation of parental rights and responsibilities, which is the subject of this present appeal. (Doc. No. 45). The matter proceeded to a hearing on January 15, 2009. (Doc. No. 53). Earnest was represented by counsel at the hearing, but Julie appeared and proceeded *pro se*. (Jan. 15, 2009 Tr. at 2-3). Thereafter, on February 4, 2009, the trial court held an in-camera interview of the parties' minor child, Trinity. (Doc. No. 56).[1] On May 8, 2009, the magistrate issued a decision recommending that: Earnest be named Trinity's residential parent with Julie being afforded visitation pursuant to local rule; and Julie be ordered to pay child support to Earnest in the amount of $190.96 per month. (Doc. No. 61).

{¶5} On May 19, 2009, Attorney Martin D. Burchfield entered an appearance as counsel for Julie. (Doc. No. 62). On May 21, 2009, Julie filed a motion seeking an extension of time to file her objections to the magistrate's decision, and for findings of fact and conclusions of law. (Doc. No. 63). On May 22, 2009, the magistrate granted Julie fourteen (14) days from the filing of the transcript to file her objections. (Doc. No. 65).

---

[1] We note that this Court has not been provided with a transcript of the magistrate's in-camera interview with Trinity.

{¶6} On July 27, 2009, Julie filed her objections to the magistrate's decision, arguing that an absence of a change in circumstances precluded the magistrate from modifying the parental rights of the parties. (Doc. No. 68). On August 21, 2009, the trial court sustained Julie's objections, overruled the magistrate's decision, and reinstated all previous orders of the court. (Doc. No. 70).

{¶7} On September 9, 2009, Earnest filed a notice of appeal from the trial court's August 21, 2009 judgment. Earnest now appeals raising one assignment of error for our review.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN FINDING THAT NO CHANGE IN CIRCUMSTANCES HAD OCCURRED RELATIVE TO THE PARTIES OR THEIR MINOR CHILD SINCE THE ISSUANCE OF THE PRIOR PARENTING DECREE AND THAT THE COURT WAS PRECLUDED FROM MODIFYING PARENTAL RIGHTS AND RESPONSIBILITIES.**

{¶8} In his sole assignment of error, Earnest argues that the trial court erred by failing to find a change in circumstances upon which the magistrate could reallocate parental rights and responsibilities. Earnest points to several facts that he alleges are changes in circumstances, including: (1) the child's age and the fact that the child expressed her wishes and concerns to the magistrate during an in-camera interview; (2) Julie has moved twice without proper notice being provided

to the court or to him; (3) that Julie has lived with one boyfriend for a year and is currently involved with another man who stays at her home most evenings but has another residence where Julie and Trinity sometimes stay even on school nights; (4) Julie's mother cares for Trinity every day after school and helps her with all of her homework due to Julie's current work schedule; (5) Trinity is unable to participate in extracurricular activities due, in part, to Julie's work schedule; (6) Julie is often asleep in the mornings so that Trinity has to prepare herself for school, which has resulted in Trinity being late several times; (7) at least once, Trinity waited outside for the school bus for two hours since school was delayed; (8) Julie has failed to provide Trinity with necessary medications for her asthma and allergies, failed to attend doctor's appointments, and, generally, failed to take responsibility for Trinity's healthcare; (9) as a result of Julie's failure to ensure that Trinity has taken her medication, Trinity's lung capacity deteriorates while in Julie's care; whereas, her lung capacity showed signs of improvement when she was with Earnest over the summers; (10) Julie fails to pay for Trinity's school supplies and provide Trinity with lunch money, which Earnest provides in addition to his monthly child support and medical expenses; (11) Earnest has since remarried, is self-employed and working from home, which would allow him to be home in the mornings prior to school and in the evenings after school for Trinity.

{¶9} R.C. 3109.04 provides, in pertinent part:

**(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a *change has occurred in the circumstances* of the child, the child's residential parent, or either of the parents subject to a shared parenting decree \* \* \***

On the one hand, a change in circumstances must be "a change of substance, not a slight or inconsequential change." *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. As the Court in *Davis* stated, "'[t]he changed conditions \* \* \* must be substantiated, continuing, and have a materially adverse effect upon the child. The latter is the paramount issue.'" 77 Ohio St.3d at 417, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 483, 445 N.E.2d 1153. See, also, *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 604-05, 737 N.E.2d 551; *Lindman v. Geissler*, 171 Ohio App.3d 650, 2007-Ohio-2003, 872 N.E.2d 356, ¶33. On the other hand, R.C. 3109.04(E)(1)(a) does not require that the change be "substantial," nor does "'the change \* \* \* have to be quantitatively large, but rather, must have a material effect on the child.'" *Davis*, 77 Ohio St.3d at 417-18; *McLaughlin v. McLaughlin-Breznenick*, 3d Dist. No. 8-06-06, 2007-Ohio-1087, ¶16, citing *In Re Tolbert v. McDonald*, 3d Dist. No. 1-05-47, 2006-Ohio-2377, ¶31, citing *Green v. Green*, 3d Dist. No. 14-03-29, 2004-Ohio-185, ¶7.

{¶10} As the Court in *Davis* noted, R.C. 3109.04(E)(1)(a)'s "change of circumstances" requirement furthers the statute's:

> **\* \* \* clear intent \* \* \* to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.**

77 Ohio St.3d at 418, quoting *Wyss*, 3 Ohio App.3d at 416. Likewise, it has been noted that "'[t]he purpose of requiring a finding of a change in circumstances is to prevent a constant relitigation of issues that have already been determined by the trial court.'" *Saal v. Saal* (2001), 146 Ohio App.3d 579, 582, 767 N.E.2d 750, quoting *Zinnecker v. Zinnecker* (1999), 133 Ohio App.3d 378, 383, 728 N.E.2d 38.

{¶11} In determining whether a "change" in circumstance has occurred, "a trial judge must have wide latitude in considering all the evidence before him or her \* \* \* and such a decision must not be reversed absent an abuse of discretion." *Davis*, 77 Ohio St.3d at 418, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Applying this standard of review, "an award of custody \* \* \* supported by a substantial amount of credible and competent evidence \* \* \* will not be reversed as being against the weight of the evidence by a reviewing court." *Davis*, 77 Ohio St.3d at 418, quoting *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. Though a trial court's discretion in a custody proceeding is broad, it is not absolute, and the trial court must follow the procedure described in the applicable statute. *Miller*, 37 Ohio St.3d at 74.

{¶12} The trial court sub judice concluded that Earnest had failed to establish a change in circumstances under R.C. 3109.04(E)(1)(a), which precluded the court from modifying the parental rights and responsibilities of the parties. (Doc. No. 68). The trial court stated as follows:

> **Certainly, the plaintiff correctly cites that the defendant has changed residences, has changed jobs, and has changed boyfriends. He also argues that Trinity (Welch), d.o.b. 4/24/2000, is now more mature since the issuance of the prior decree. However, these examples of "change" are all within the natural contemplation and anticipation of the parties, (or reasonably should have been), when the prior parenting decree was issued. The magnitude of "change" as envisioned by statute cannot be "mere" change, such as would naturally be anticipated by a reasonable person. Otherwise natural "change "would result in constant efforts by parents to seek modifications, further resulting in placement disruptions to the child.["] Further review of the transcript, by the court, does not reveal any other such "change in circumstances" that would otherwise warrant a modification from the prior decree.**

(Id.).

{¶13} Applying the foregoing rules of law here, we cannot conclude that the trial court abused its discretion by finding that the record does not contain any change in circumstances under R.C. 3109.04(E)(1)(a) warranting a modification from the prior decree. Earnest's alleged changes of circumstances do not constitute "a change of substance" sufficient to warrant a change of custody determination. *Davis*, 77 Ohio St.3d at 418. Earnest's arguments that he is now married, works from home, and would be present when Trinity gets ready for

school and returns from school; and that Trinity cannot be involved in extracurricular activities due, in part, to Julie's work schedule are essentially arguments that Trinity would be better off with him because he could provide her with a better environment. Evidence that a child would be better off is not sufficient to support a change of custody. *Well v. Well* (1990), 70 Ohio App.3d 606, 591 N.E.2d 843. Likewise, "custody of a child will not be changed merely on a showing by the nonresidential parent that he can provide a better environment than the residential parent." *Allgood v. Allgood* (Oct. 25, 1999), 12th Dist. No. CA98-12-156, at *7, citing *Wyss*, 3 Ohio App.3d 412; *Saal*, 146 Ohio App.3d at 583. The Court in *Hayes v. Hayes* rejected a father's arguments that he had the ability to spend more time with his son than before and that he had recently built a "gated-community" home in an "excellent" school district where his son could play hockey constituted changes in circumstances under the statute. 11th Dist. No. 2005-L-138, 2006-Ohio-6538, ¶22. The Court in *Hayes* agreed with the trial court that the father's arguments were essentially that he could provide a "better" home environment, which is insufficient to find a change in circumstances. Id.

{¶14} Likewise, the Court in *Andrews v. Andrews* found that a father's allegations that his former wife failed to provide their daughter with sufficient medical attention; that his former wife moved from Ohio without notifying the court; that his former wife quit her job in Ohio and took a job in Virginia; that the

-9-

children were removed from their school systems; that his former wife filed bankruptcy; and that five years have gone by since the original divorce decree did not constitute a change in circumstances. 11th Dist. No. 2005-T-0121, 2006-Ohio-4942, ¶¶28-41. Like the father in *Andrews*, who raised similar purported changes in circumstances, Earnest has failed to show that the changes have had a materially adverse effect upon Trinity. *Davis*, 77 Ohio St.3d at 418, quoting *Wyss*, 3 Ohio App.3d at 416; *Rohrbaugh*, 136 Ohio App.3d at 604-05; *Lindman*, 2007-Ohio-2003, at ¶33; *McLaughlin*, 2007-Ohio-1087, at ¶16, citing *In Re Tolbert*, 2006-Ohio-2377, at ¶31, citing *Green*, 2004-Ohio-185, at ¶7.

{¶15} The evidence at the hearing demonstrated that Julie moved to a house that was a half-mile down the road from Julie's parents. (Jan. 15, Tr. at 114). Julie admitted that she neglected to inform the court that she had moved, but Julie testified that she gave Earnest's wife, Molly, actual notice of the move. (Id.). Furthermore, there is nothing in the record to indicate that this move had a materially adverse effect upon Trinity; in fact, the record contains competent, credible evidence from which the trial court could have concluded that the move benefited Trinity because it allowed her to be closer to her grandmother, Patricia Ann Schudel. (Id.); (Id. at 82-83). In fact, Patricia testified that she is able to be at Julie's house when the school bus drops Trinity and Trinity's cousin, Devin, off at the house. (Id. at 90). Patricia then takes Trinity to her home where she does her

homework until Julie is finished with work. (Id. at 89). According to Earnest's own testimony, Trinity was excelling academically and considered gifted. (Id. at 15-16).

{¶16} Furthermore, Julie's new boyfriend, Eric Langenberfer, testified that Trinity has her own bedroom in Julie's house, and that his girls slept on a couch that pulls out into a bed when they stay the night at Julie's. (Id. at 101). Langenberfer also testified that he could not recall a time when Trinity stood outside for two hours in the fog while waiting for the school bus. (Id. at 102). Trinity's grandmother, Patricia, also could not remember such an incident, and testified that Trinity has her own room, and that Langenberfer's daughters sleep on the couch when the stay at Julie's. (Id. at 83, 99-100). Julie also refuted Earnest's allegations that Trinity had to get ready for school by herself. (Id. at 115). Julie entered into evidence a copy of Trinity's progress report, which showed that Trinity had only two (2) absences. (Defendant's Ex. A).

{¶17} With regard to Trinity's medical issues, Julie testified that she went to several doctor's appointments in the beginning, but that her (Julie's) school schedule changed so she could not attend the appointments. (Id. at 114). Thereafter, Earnest stopped informing her of Trinity's appointments and even took Trinity from school for the appointments without informing Julie. (Id. at 114-15). With regard to Trinity being involved in extracurricular activities, Julie testified

that Trinity was a girl scout for a while but did not want to continue it, and that Trinity could not be in most other activities because they involved weekends when Trinity was with her father who lives out of town. (Id. at 14, 116). Trinity is involved in choir at school. (Id. at 117).

{¶18} After reviewing the record herein, we can conclude that there was competent, credible evidence from which the trial court could have concluded that Trinity was not adversely affected from any of the purported changes in circumstances. *Davis*, 77 Ohio St.3d at 418, quoting *Bechtol*, 49 Ohio St.3d 21, syllabus. As such, the trial court did not abuse its discretion in finding no change in circumstances under R.C. 3109.04(E)(1)(a). Without a change in circumstances, the trial court could not reallocate the parental rights and responsibilities of the parties herein. R.C. 3109.04(E)(1)(a); *Davis*, 77 Ohio St.3d 416. Furthermore, since the trial court found no change in circumstances, it was not required to conduct a best interest analysis under R.C. 3109.04(E)(1)(a), (F)(1). See, e.g., *Wooten v. Schwaderer*, 3d Dist. No. 14-08-13, 2008-Ohio-3221, ¶4, citing *Fox v. Fox*, 3d Dist. No. 5-03-42, 2004-Ohio-3344, ¶38 (change in circumstances is a threshold inquiry before determining whether the modification would be in the child's best interests); *Markley v. Markley*, 9th Dist. No. 06CA0043, 2007-Ohio-886, ¶12, quoting *Cowan v. Cowan*, 4th Dist. No. 04CA5, 2004-Ohio-6119, ¶16. ("If no change in circumstances occurred, the requirements

for a change of custody cannot be satisfied, and a reviewing court need not examine the court's determination of the child's best interests.").

{¶19} Earnest's sole assignment of error is, therefore, overruled.

{¶20} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**